```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT BLUEFIELD
```

UNITED STATES OF AMERICA

v.                              CRIMINAL NO.  1:03-00155-002

MONICA LORRAINE AMAKER

### MEMORANDUM OPINION AND ORDER

On July 8, 2005, the court conducted an evidentiary hearing on defendant's motion to suppress certain evidence obtained from the search of a hotel room on February 19, 2002.  After hearing the evidence and argument offered by the parties, the court allowed the parties to submit additional briefs on the issue.  Defendant submitted a memorandum in support of suppression on July 20, 2005, and the response of the United States was filed on July 25, 2005.  On July 25, 2005, the court denied the motion to suppress from the bench.  In support of that ruling, the court makes the following findings of fact and conclusions of law.

### I.  Findings of Fact

On February 18, 2002, Sgt. Ted Jones obtained a warrant from Mercer County Circuit Judge Derek Swope to search a hotel room occupied by defendant and her co-defendant Raymont David Brown. At the suppression hearing, Sgt. Jones testified that he had been a police officer for 25 years and had served on the Southern

Regional Drug and Violent Crime Task Force since 2000.[1]  In early 2002, Sgt. Jones interviewed Margaret Rodgers who told him that defendant had been supplying her with Dilaudid.  Sgt. Jones also testified that he received information that defendant and Brown were dealing drugs out of the Knight's Inn Motel in Bluefield, West Virginia.

Based upon that information, Sgt. Jones set up surveillance on Room 115 at the Knight's Inn.  During his surveillance, Sgt. Jones observed six people go in and out of Room 115.  These people only stayed in Room 115 for short periods of time, i.e., less than ten minutes.  Sgt. Jones also confirmed that Room 115 had been rented by defendant.  According to Sgt. Jones' affidavit, the Knight's Inn's records indicated that defendant rented the room from January 31, 2002 through February 17, 2002.

On February 13, 2002, at the Pizza Hut located near the Knight's Inn, Sgt. Jones picked up Keith and Cindy Hollyfield based on warrants for their arrest pending in Tazewell County, Virginia.  The Hollyfields advised that they had been purchasing Dilaudid from defendant at the Knight's Inn for approximately 10 days.  After the Hollyfields' arrest, officers observed no further suspected drug dealing activity at the Knight's Inn location.

---

[1] The affidavit submitted by Sgt. Jones in support of his application for the search warrant and admitted into evidence at the hearing details Sgt. Jones' extensive training and experience in the investigation of drug offenses.

2

On February 18, 2002, Detective John Jones with the Bluefield Police Department received information that defendant and Brown had moved to the Holiday Inn, that there were a lot of people entering and leaving their room, and that they were suspected of dealing drugs from the room.  Upon going to the Holiday Inn, Sgt. Jones observed the same vehicles as had been used by defendant and Brown at the Knight's Inn.  Sgt. Jones also learned from an employee of the Holiday Inn that defendant and Brown had been in Room 224 at the Holiday Inn since February 14, 2002.  An employee also confirmed that a number of visitors had been seen going in and out of Room 224 and were staying less than ten minutes.

Based on the foregoing information, on February 18, 2004, Sgt. Jones obtained a search warrant for Room 224.[2]  Thereafter, law enforcement went to the Holiday Inn and, in order to observe Room 224, set up surveillance in Room 226.  Because they wanted to be sure defendant and Brown were in the room when they executed the warrant, law enforcement did not execute the warrant on February 18, 2004.

Upon returning to the Holiday Inn on February 19, 2002, Sgt. Jones observed defendant and Brown in the K-Mart parking lot.  A person was seen walking to their vehicle.  Thereafter, defendant and Brown returned to their room at the Holiday Inn and the officers waited until the door of Room 224 was opened to execute

---

[2] Defendant has not argued that probable cause was lacking when the warrant was issued.

the warrant.[3]  Upon entering Room 224, officers observed money and a plastic bag of pills that appeared to be Dilaudid on a bed in the room.  After arresting defendant, officers recovered money and scales from her purse.

## II.  Conclusions of Law and Analysis

The defendant bears the burden of demonstrating a Fourth Amendment violation, Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978), and, on appeal, the court reviews the evidence in the light most favorable to the party prevailing below.  United States v. Seidman, 156 F.3d 542, 547 (4th Cir. 1998).  The factual findings underlying a motion to suppress, including credibility determinations, are reviewed for clear error, while the legal determinations are reviewed de novo.  Ornelas v. United States, 517 U.S. 690, 699 (1996); United States v. Murray, 65 F.3d 1161, 1169 (4th Cir. 1995); United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 506 U.S. 926 (1992).

Defendant argues that the search should be suppressed because: 1) probable cause had lapsed between issuance and execution of the warrant; and 2) the officers wanted to search the person of defendant more than they wanted to search Room 224.

As one court has noted:

> Probable cause is a fair probability that contraband or evidence of a crime will be found in the location to be searched.  We determine probable cause under a

---

[3] Sgt. Jones testified that they waited to execute the warrant until the door was open because they wanted to avoid damaging the door.

4

> totality-of-the-circumstances approach.  A delay in executing a search warrant may render stale the probable cause finding.  Important factors to consider in determining whether probable cause has dissipated, rendering the warrant fatally stale, include the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search.

United States v. Gibson, 123 F.3d 1121, 1124 (8th Cir. 1997) (internal citations and quotations omitted).  According to the Fourth Circuit Court of Appeals, "[t]he vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit."  United States v. Farmer, 370 F.3d 435, 439 (4th Cir.), cert. denied, 125 S. Ct. 676 (2004).  "For purposes of determining whether the information on which the search warrant was based was `stale,' courts must look to all the facts and circumstances of the case, including the nature of the criminal activity under investigation, the length of time during which the criminal activity is alleged to have occurred, and the nature of the property to be seized."  United States v. Bateman, 805 F. Supp. 1041, 1044-45 (D.N.H. 1992); see also United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984).

Defendant's argument that the warrant became stale because the officers failed to execute it until the day after it was issued is without merit.  West Virginia Code § 62-1A-4 sets a ten-day limit for the execution and return of search warrants.  See also Fed. R. Crim. P. 41(e)(2)(A).  Although not dispositive, the officers' adherence to the time limitations imposed by statute is further support for finding the warrant was not stale.

5

See United States v. Byars, 762 F. Supp. 1235, 1239 (E.D. Va. 1991).

Likewise, between issuance of the warrant and its execution, officers observed defendant in what appeared to be drug-dealing activities on the nearby K-Mart parking lot.  This, coupled with the on-going nature of defendant's drug dealing activities, certainly provided probable cause.  It was not unreasonable for law enforcement to believe that defendant was involved in a continuing criminal enterprise and that probable cause had not lapsed based upon: 1) information received from employees of the Holiday Inn regarding the number of persons going to and from Room 224; 2) the information from Margaret Rogers; 3) the statements of the Hollyfields that defendant had supplied them with drugs from February 3, 2002 until February 13, 2002, the day of their arrest; 4) the statement of Cindy Hollyfield regarding the large amount of drugs which she had seen in defendant's possession; and 5) the officers' own surveillance, both at the Knight's Inn and the Holiday Inn.

"[T]he nature of the unlawful activity--drug trafficking-- makes staleness unlikely in the circumstances at bar."  Byars, 762 F. Supp. at 139.  Furthermore, courts have rejected staleness claims in cases where the delay between issuance and execution of the search warrant far exceeds the delay in the instant case.  See Byars, 762 F. Supp. at 139 and the authorities cited therein.  For these reasons, the court finds that probable cause did not

lapse between issuance and execution of the search warrant herein.

The second prong of defendant's argument--that by waiting until defendant was in Room 224 to execute the warrant, the officers impermissibly converted the search warrant to one of defendant's person--is equally without merit. Sgt. Jones was not required to ignore the lessons of his experience that it was more likely that drugs would be found in the hotel room when defendant was there and defendant has directed the court to no authority which would dictate otherwise.[4] See, e.g., United States v. Dunnings, 425 F.2d 836, 840-41 (2d Cir. 1969) (officers were justified in waiting nine days to execute search warrant where they wished to be sure defendant was at residence so that they could be sure alleged contraband was there), cert. denied, 397 U.S. 1002 (1970); United States v. Walker, 871 F. Supp. 1, 2 (D.D.C. 1994) (officer's nine-delay in executing search warrant acceptable where officer waited until, in his opinion, he would find the maximum amount of drugs in building). In fact, the drugs that were seized were found on a bed in the hotel room, not on defendant's person. The scales and money found in defendant's purse were seized incident to her arrest.

Based on the foregoing, the court DENIED defendant's motion to suppress.

---

[4] The Preston case, relied upon by defendant, did not analyze whether the search therein could have been sustained in the absence of an authorization to search the person. See United States v. Preston, 915 F.2d 1566, 1990 WL 152491 (4th Cir. 1990) (unpublished).

The Clerk is directed to FAX and mail a copy of this Memorandum Opinion and Order to counsel of record, to the United States Marshal for the Southern District of West Virginia, and to the Probation Office of this court.

IT IS SO ORDERED this 28th day of July, 2005.

ENTER:

*David A. Faber*

David A. Faber
Chief Judge